The next case for argument this morning, United States v. Antwain Moore, Appeal No. 21-2485. We'll hear first from Mr. Brodnick. Thank you, Your Honors. May it please the Court. My name is Tom Brodnick, here for the defendant, Antwain Moore. I think it's important here to spend just a few seconds indicating the things that the defense and the government agree on with regard to this appeal. First, based on the actual or pure methamphetamine, Mr. Moore's guideline range was 130 to 162 months. And the Court imposed a sentence of 120 months, so it departed downward a little bit from the minimum of that range. Second, based on a mixture or substance of methamphetamine, the guideline range for my client would have been 77 to 96 months, well below the sentence that was actually imposed by the trial court. Third, there's only two pieces of evidence in this case that impact on purity. The first is a government lab report, which is a single-page document that states that the methamphetamine was 100% pure, plus or minus 6%, or it consisted of 55.6 grams, plus or minus 3.4 grams. The second piece of evidence impacting on purity is the defense's expert witness, who in a signed affidavit, stated that from the lab report, the exact purity of the methamphetamine could not be determined, because the purity level, the comparison to the methamphetamine in this case was made with a reference library pattern, as opposed to a substance of known purity. And because of that, our expert indicated that the purity level of the methamphetamine could have actually been lower. Second, he testified by way of his affidavit, that it could not be determined what the purity level was, because it was impossible to determine whether the lab report, the purity level, was consistent throughout the 55 grams of methamphetamine that was tested. Thus, what we're looking at here is a question of does the lab report bear a sufficient indicia of reliability to support its accuracy in light of Mr. Beauchamp's testimony, such that the government has met its burden of proof. We submit, Your Honors, that it does not. The government did not present any evidence at the sentencing hearing to rebut the defense's expert with regard to the opinions that he provided. Can we break Dr. Beauchamp's affidavit into two parts? He says exact purity could not be determined. Correct. That's not required. I agree. Above 80%, I think, is the standard for ice for the guidelines, right? Correct, Your Honor. Okay. So at least many of us who didn't do particularly well in science class do remember that most measurements have a margin of error when it comes to science up or down. So exactness is not the standard. So the real question is the second part and whether his affidavit sufficiently calls into question the reliability of the conclusion. Right? I agree with that, Your Honor. Okay. And I think it calls in the reliability of the conclusion in two factors, Your Honor. First, I agree exact levels of purity are not necessary. However, because the government did not use a known reference standard, Mr. Beauchamp testified that the actual purity level could be lower. Certainly didn't opine how much lower it could have been, but he said it could have been lower. The second thing, and I think this is even more important, Your Honors, is that he said he could not determine from the lab report whether the purity level was consistent throughout the sample. So if it's not consistent throughout the sample, it's impossible to determine whether it met the threshold of 80% and whether it met the threshold of being nice. Instead of presenting evidence to rebut Mr. Beauchamp's affidavit, the government argued and the district court accepted this argument was that the DEA's testing protocols are well known and they are well accepted within the scientific community. That finding, Your Honors, in our view is judicial notice, pure and simple. This court in the General Electric case that we cited in our reply brief indicated that judicial notice is in effect a substitution of a universal truth for the conventional method of taking evidence or proving a fact. In order for the court to take judicial notice, the fact judicially noticed must not be reasonably susceptible to dispute. And in that it must be either generally known within the community or it must be accurately and readily determinable from a source that cannot reasonably be questioned. Clearly the DEA's protocols are not generally known within the community. I certainly don't know them and I doubt many people on the street would know them. While it is possible that the DEA's protocols could be accurately and readily determinable from a source that can't be questioned, there's no evidence that was put into the record to prove that fact, from which the trial court could have taken that and turned it into a judicial notice. I would also point out that even if it were proper, which we do not believe it was, for the court to judicial notice the DEA's protocols, in order to make the determination that this methamphetamine was 80% pure, the district court had to take it one step further. And that is a finding that the DEA, in this particular instance, abided by those protocols. And as we have cited through the Harper case, certainly a military justice case, but the standard is the same, that's a fact, pure and simple, that cannot be judicially noticed. So you want to cross-examine the lab tech? I want at least the lab tech, if we have cast doubt sufficiently with regard to the reliability of that lab report, then I want the lab report to either introduce an affidavit indicating what he did, or to testify on the stand as to what he did so that he could be cross-examination. There has to be some evidence put in by the government to meet that burden. The burden's on the government, it's not on me. It's my job to cast doubt, it's not my job to make proof with regard to that it didn't meet the 80% threshold. A case that we cited, and I think it's pertinent here, is the Carnell case from this court. The government tried to indicate various different methods to prove that the methamphetamine was 80% pure. One of those was the nomenclature that the defendants used. They all called it ICE. This court rejected that, said without evidence that there's an 80% purity level, we can't say nomenclature carries the day in this case. The second was it rejected the fact that the ICE in that case was crystalline, said without testimony that methamphetamine doesn't form into crystals unless it's 80% pure, again, doesn't mean that the government carried its burden of proof in that case. The government knew with regard to our objection for about five weeks. It was submitted over a month before the sentencing hearing in this case. The government chose not to submit an affidavit from its expert. The government chose not to provide the court with materials from which it could take judicial notice, and in our opinion, Your Honors, the government has failed to carry its burden of proof to prove that the methamphetamine in this case was 80% pure. Thank you, Your Honors. Thank you, Mr. Brodning. For the government, Ms. Massa. Good morning, Your Honors, and may it please the court, Assistant United States Attorney Kelsey Massa on behalf of the appellee, the United States. This is not a judicial notice case. There was no error made by the district court here at sentencing, no error clear or otherwise. The district court properly weighed the evidence that it had in front of it regarding the purity of the methamphetamine. It, within its discretion, disregarded the affidavit filed by the defense, and interestingly, in the appellant's brief, it repeatedly, I think, states that there was no evidence in front of the court regarding the purity of the methamphetamine. That's patently untrue. The lab report itself is evidence, and it is sufficient. What's the basis, though, for choosing between the affidavit and the lab report? The basis, Your Honor, is that the affidavit is from a scientist that has no specific expertise, has no information in the affidavit regarding any expertise or experience that he has in testing methamphetamine and testing any types of controlled substances. There's no information in the affidavit regarding the DEA protocols. There's no indication that the scientist has ever been inside of a DEA lab or spoken to any other scientists that have experience in testing controlled substances. And so it's our position, Your Honor, that this affidavit simply does not move the needle in any way in casting doubt on the lab report. The lab report itself, again, is sufficient evidence to establish purity. Suppose there's no affidavit from Dr. Beauchamp at all. Is the defendant entitled to get a sentencing hearing to challenge the results from the DEA lab? I think, Your Honor, without any other information put before the court about why the court should doubt the reliability of the lab report, and this court has specifically noted in— Wait a minute. You're telling me that the defendant does not have a right to challenge the lab reports? Not at all, Your Honor. I'm merely saying that there has to be some sort of evidence put before the court regarding why this court should not take the lab report as reliable. Well, okay. So you're saying then the defendant is not entitled to just say, I see the lab report. I have a lot of unanswered questions. I'd like to examine the lab tech or somebody who can explain the protocols. Yes, given that the standard is a preponderance of the evidence, I don't think that— It's a preponderance of the evidence. A man's liberty is at stake. And he has a due process right to be sentenced on the basis of reliable information, right? Absolutely, Your Honor. And this court has noted that scientific testing and lab reports are among the best evidence that there is to establish purity. And are they infallible? No. No, Your Honor. They're not. So why not just have a hearing if the defendant says, I'm not convinced. I'm not satisfied. I don't trust these results. And they're going to affect several years of my life. I think, Your Honor, that could just change the standard at sentencing for many other issues. And what the court had in front of it was evidence from the DEA lab report. So what's the parade of horribles look like here? It would raise the standard, Your Honor, from a preponderance to something that looks a lot more like clear and convincing or beyond a reasonable doubt. No. No. It's simply an opportunity to confront the evidence. To confront the evidence that's being relied upon. It's not a question of preponderance versus beyond a reasonable doubt or clear and convincing evidence. It's just a question of an opportunity to confront the evidence. Well, and I think, Your Honor, it could potentially convert every sentencing hearing into a fry hearing or something along those lines. Yeah. Yeah. I mean, that can happen. The guidelines put the burden on the government to come forward with evidence of purity. You've got the lab report. If you want to apply the rules of evidence, which don't strictly speaking apply, but it's hearsay unless you've got somebody there to say, I did the tests, et cetera, right? Yes, Your Honor. But absent any information that the lab report is itself unreliable, just because evidence is not infallible doesn't necessarily mean that the burden is higher in that scenario. I'm not talking about the burden. I'm talking about an opportunity to confront and challenge evidence. I think, and in this case, Your Honor, the defendant did have the opportunity, but the affidavit filed was simply not sufficient to move the needle, and the court had sufficient evidence to make the determination about purity. The scientist, Dr. Beauchamp, did not purport to have any specific expertise about drug testing or any— Did the judge make a finding that he was not qualified? I think it's implicit in the— Did he make a finding? Not specifically in the record, Your Honor. But I think the judge did weigh the evidence that it had in front of it and decided to rely, and I think reasonably rely, on the lab report. And this court in Carnell specifically noted, again, that scientific testing and lab reports are among the best evidence that we have to make purity determinations. On the assumption that there would be an opportunity for adversarial testing, that's always the case in sentencing information, right? Yes, absolutely, Your Honor. Is there any information, a category of sentencing information, that a district judge can rely upon without making it subject to adversarial testing? No, Your Honor. But in this case, and especially in relation to this court's decision in Carnell, the issue there was that the government was trying to prove it up by other means other than— Yeah, street talk, obviously, was not going to carry the day. Correct. That's the issue in Carnell, so, yeah. Absolutely. And Harper, the other case that the appellant relies upon, again, the standard there was different. That was not a sentencing. That was a military trial. And multiple other circuits. Was the defendant able to subpoena the chemist? Yes, Your Honor, absolutely. There's no prohibition of that if he wanted to cross-examine the defendant at sentencing? No, none at all. The appellant absolutely could have called the chemist themselves as opposed to choosing this route and filing an affidavit from a scientist who had no specific expertise in this type of testing. Of course, it's the government's burden of proof. It's sentencing to prove the purity and to prove the quantity of the drugs and things like that, but if the government decides to rely upon an affidavit or lab report, it may or may not be enough, right? And strategically, there may be good reasons that the defendant would rather the chemist not be in the courtroom to offer live testimony, I suspect. Correct, Your Honor, because in this scenario, I think it's fair to think that the chemist would come and testify about the protocols and testify to the exact same result that is in the lab report, the exact same result that the district court reasonably relied upon. And so I guess I'm getting as there may be some, maybe there's a glimmer of hope for the defendant in arguing to the district judge that the lab report is not enough and maybe the district court will go along with that, but by calling the chemist to the stand, the defendant may in fact remove all doubt and the district judge may have a very easy decision to make regarding quantity and purity. Absolutely, Your Honor, because that's what… Which could be accomplished on remand here, right? Potentially, Your Honor, yes. But it's our position that the district court had sufficient evidence, the lab report is sufficient and reliable evidence, and allowing a defendant to sort of raise a pro forma challenge to a lab report without any specific information about the protocols, any specific information in the affidavit regarding controlled substance testing, this is not a scenario where there's… Well, I think pro forma would be what we probably see more commonly where a defendant just says through an attorney proffer, we don't think this report is reliable and nothing more. I don't think it's pro forma if the defense actually takes the time to go out and get an expert and put together a paper stating what the problems are with the report from that expert's point of view. That's absolutely a fair point, Your Honor, but I still think that the affidavit, we'd still argue that the affidavit in this case does not move the needle sufficiently. It does not cast doubt on the reliability of the lab report, and for the reasons that I've stated, I would ask that this court affirms the sentence of the district court. Just so I understand, the judge weighed the lab report and the affidavit, right? Yes. And then made a finding. Yes, Your Honor, that's correct. That's exactly what happened here. There was no error, and this court has to be left with a clear and definite conviction that there was an error made and the appellant can't possibly meet that standard with the evidence that the court had in front of it. So we would ask, based on that standard, for the court to affirm. Thank you. Okay, thank you, Ms. Massa. Rebuttal, Mr. Brodnick? Very briefly, Your Honor. Thank you. Your Honor, you asked the right question. There is no finding from Judge Young that he disregarded the defense's expert. Well, he rejected it by accepting the lab report, right? No, Your Honor, I don't think that's the case. The lab report came into evidence. And he accepted the lab report when he made findings of fact as to the purity and the quantity of the drugs. He had to. He didn't just eyeball the drugs and say, I think that they're pure. He didn't put a scale on the bench, did he? Here's what he did, Your Honor, is that he certainly weighed the lab report. He certainly weighed my expert's opinion. And then he said, based on the DEA protocols, which are well accepted in the scientific community, I find that the government has proven its case beyond or by a preponderance of the evidence. In very one sentence sum up, Your Honor, our position is if, to determine purity, the district court had to rely on DEA testing protocols, protocols that were not in evidence and are not subject to judicial notice, the government has failed to carry its burden of proof. Thank you, Your Honor. Thank you, Mr. Brodnick. Thanks, Ms. Manzo. The case is taken under advisement.